# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

MICHAEL NOZICK,
    Plaintiff,

v.                                      C.A. No. 23-cv-200-JJM-LDA

LIFESPAN CORPORATION,
    Defendant.

## ORDER

Plaintiff Michael Nozick worked as a Registered Nurse ("RN") at Rhode Island Hospital ("RIH") until Defendant Lifespan Corporation[1] terminated him. He sued Lifespan, alleging that it discriminated against him because he was disabled and failed to reasonably accommodate his disability; Lifespan says it fired him for cause. Lifespan moves for summary judgment, arguing that Mr. Nozick's case should be dismissed because there is no dispute that he did not inform anyone at RIH that he was suffering from a disability such that he was not discriminated against as a matter of law. It also argues that Mr. Nozick never asked for a disability accommodation. Because the Court finds that Mr. Nozick's discrimination case fails, it GRANTS Lifespan's Motion for Summary Judgment. ECF No. 10.

---

[1] RIH is a founding partner of Lifespan, a health system providing services to the people of Rhode Island and Massachusetts. The Miriam Hospital, among others, is also a Lifespan partner. Lifespan has recently announced it is changing its name to Brown University Health.

## I. BACKGROUND

Mr. Nozick was previously employed as a nurse at The Miriam Hospital, another Lifespan partner hospital. During this time, he was referred to Lifespan's Employee Assistance Program, as there was concern that he was talking to himself or someone who was not present, and that referral led to him being diagnosed with Tourette's Syndrome. He disclosed his diagnosis and sought a reasonable accommodation.[2] He resigned after about two years of employment.

Mr. Nozick then took a job as an RN in the Neuro-Critical Care Unit ("NCCU") at RIH. ECF No. 11 ¶ 1. He never reported his disability to anyone at RIH at any time during his employment.[3] *Id.* ¶ 30; ECF No. 11-1 ¶¶ 18-21; ECF No. 11-2 ¶¶ 25-30. Throughout his employment, several co-workers raised concerns to Jassie Nah, the interim clinical manager at the NCCU and Mr. Nozick's manager, about Mr. Nozick's nursing practices. ECF No. 11 ¶¶ 4-7. Ms. Nah reported these concerns to Janet Lerch, Lifespan senior Human Resources business partner, and the two made the decision to terminate Mr. Nozick's employment for concerns about patient safety. *Id.* ¶¶ 14-16. Additionally, because of the "gravity of the safety concerns expressed by Mr. Nozick's colleagues regarding his nursing practice," Ms. Lerch and Ms. Nah designated Mr. Nozick ineligible for rehire within Lifespan. *Id.* ¶ 21.

---

[2] It appears that Miriam Hospital did give him an accommodation, but the record does not specify what that accommodation entailed.

[3] While Miriam Hospital and RIH are both Lifespan partners, there is no evidence that Ms. Nah and Ms. Lerch knew of Mr. Nozick's communication with Miriam about his disability when they decided to terminate him. ECF No. 11 ¶¶ 25-33.

Mr. Nozick sued Lifespan for violating the Americans with Disabilities Act of 1990 ("ADA"), alleging that Lifespan terminated him because of his disability and failed to provide him with a reasonable accommodation.[4] ECF No. 1. Lifespan moves for summary judgment. ECF No. 10.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. An issue is genuine when "a reasonable jury could resolve the point in favor of the nonmoving party." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995). A fact is material if it may affect the outcome, thus, irrelevant, or unnecessary factual disputes are not material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Id.* at 255. Additionally, where the defendant has "properly supported [his] motion for summary judgment, the plaintiff could not rest on his allegations of a conspiracy to get to a jury without 'any significant probative evidence

---

[4] Mr. Nozick argues in opposition to summary judgment that Lifespan discriminated against him by being subjected to disparate treatment; specifically, he argues that other nurses at RIH made the same mistakes he did, and they were not disciplined or terminated for that conduct. The Court declines to consider his disparate treatment arguments for two reasons: first, Mr. Nozick does not claim disparate treatment in his Complaint and second, he cites no evidence in support. After a period of discovery where testimony is taken and documents exchanged, summary judgment is appropriate when the nonmoving party "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Theidon v. Harvard Univ.*, 948 F.3d 477, 497 (1st Cir. 2020).

3

tending to support the complaint.'" *Id.* at 249 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

## III. DISCUSSION

Under the ADA, employers are prohibited from discriminating against an employee "on the basis of disability." 42 U.S.C. § 12112(a). Mr. Nozick claims that Lifespan has done so by not providing a reasonable accommodation for his disability and by terminating his employment. He does not have any direct evidence of discriminatory animus, and therefore, the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. Under this analysis, a plaintiff has the initial burden of proving a prima facie case. *Id.* at 802. If he establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Id.* If the employer offers a non-discriminatory reason, the burden then shifts back to the plaintiff to show that the employer's justification is pretext for discrimination. *Id.* at 804.

Because Lifespan "assum[es] for the sake of argument" that Mr. Nozick sets forth a prima facie case, the Court will focus on the second and third steps of the *McDonnell-Douglas* analysis.

### A. Legitimate Non-discriminatory Reason

Both ultimate decisionmakers provided sworn statements asserting that they terminated Mr. Nozick because of reports from co-workers that he was engaging in unsafe nursing practices and that they had other patient safety concerns. ECF Nos. 11-1, 11-2. Ms. Nah affirmed that Mr. Nozick's co-workers "reported a host of

4

concerns about [his] competency and safety" and she went on to list eight different situations of concern. ECF No. 11-1 ¶¶ 8-9. She stated that she had no reason to doubt the accuracy or credibility of these reports as they were consistent and from different sources. *Id.* ¶¶ 10-12. Ms. Lerch affirmed that Ms. Nah reported this same concerning behavior to her and that, given the "serious and repeated nature of the concerns," Ms. Nah thought he should be dismissed from his position. ECF No. 11-2 ¶¶ 12-13. Concern for patient safety and an insistence on competent nursing practices are paramount considerations in a hospital setting and so the Court concludes that Lifespan's explanation of its reasons for termination is non-discriminatory.

### B. Pretext

Next, Mr. Nozick must show pretext; that is, he "must show that there is a genuine dispute over whether (1) the articulated reason is pretextual (i.e., a fabrication, not the real reason) and (2) the true reason is discriminatory." *Ripoli v. Dep't of Hum. Servs., Off. of Veterans Affs.*, No. 1:17-CV-225-JJM-LDA, 2023 WL 7920473, at *5 (D.R.I. Nov. 16, 2023) (citing *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir. 1999)). "In assessing pretext, a court's 'focus must be on the perception of the decisionmaker.'" *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991) (quoting *Gray v. New Eng. Tel. & Tel. Co.*, 792 F.2d 251, 256 (1st Cir. 1986)). While plaintiff does not have to show any direct evidence of pretext, he must produce enough evidence to create a genuine dispute over whether the action was both pretextual and discriminatory. *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.

5

1990). To do so, plaintiff must "elucidate specific facts which would enable a jury to find that the reason given was not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination." *Id.*

Lifespan's pretext defense is two-fold–it argues that it could not have discriminated against Mr. Nozick because Ms. Nah and Ms. Lerch did not know he was disabled and, even if they did, their reason to terminate him was not discriminatory because it was based on his job performance and competency as a nurse. The Court finds that Mr. Nozick has not presented sufficient evidence to show that Lifespan knew that he had a disability in the first place. Mr. Nozick did not dispute that

- "During the course of his employment at the NCCU, Mr. Nozick never disclosed his alleged diagnosis of Tourette's syndrome to or requested an accommodation from Ms. Nah. (Ex. 1, Nah Affidavit ¶ 18, 20)." ECF No. 11 ¶ 30;

- "At no point during the meeting did Mr. Nozick indicate he had a disability or required an accommodation. (Ex. 2 Lerch Affidavit ¶ 26)." *Id.* ¶ 32;

- Lifespan's Human Resource's Department has no record of Mr. Nozick having requested a disability related accommodation during his employment in the NCCU at RIH. (Ex. 2 Lerch Affidavit ¶ 27)." *Id.* ¶ 33.

Both decisionmakers included in their statements that they were unaware of Mr. Nozick's disability at the time of his termination and these statements. It is also

6

undisputed that Mr. Nozick had not reported his disability to RIH until after his termination. *Id.* ¶¶ 38-39.

Mr. Nozick argues that the decisionmakers had constructive notice, meaning they should have known of his disability, because he reported it to his previous employer, Miriam Hospital, another Lifespan partner. Yet it is undisputed that Ms. Lerch and Ms. Nah did not hire him, so they never reviewed his resume and were not even aware of his earlier employment at Miriam Hospital. ECF No. 11-1 ¶¶ 22-25; ECF No. 11-2 ¶¶ 35-38. Mr. Nozick did not provide evidence to contradict these statements. And he admitted that "he did not consider disclosing his disability of Tourette's Syndrome" during his termination meeting but emailed them about it afterward. ECF No. 13 at 9. This admission shows that he knew that Ms. Nah and Ms. Lerch were unaware of his diagnosis because he acknowledged that he had never disclosed it. Since Mr. Nozick cannot prove that Ms. Lerch and Ms. Nah knew of his disability, he cannot prove that they had a discriminatory motive when they fired him.

Instead, Mr. Nozick attempts to imply a discriminatory motive by challenging the conduct on which his termination was based; that is, he argues that conduct and incidences that his co-workers reported to Ms. Nah were either not that serious or totally inaccurate. But he presents no evidence, other than his own speculation, that the reasons Lifespan articulated for firing him were a sham or that Ms. Nah and Ms. Lerch had reason to doubt the truth or seriousness of the safety concerns. He may dispute that his conduct was unprofessional or did not meet patient safety

7

guidelines, but he cannot show that the real reason RIH fired him was based on a disability about which he never told anyone at RIH, including his manager. And faced with Lifespan's evidence that Ms. Nah and Ms. Lerch believed Mr. Nozick was engaging in unsafe nursing practices and that is why they terminated him, the Court finds that he has not met his burden to prove pretext.

### C.   Reasonable Accommodation

Finally, Mr. Nozick alleges that Lifespan failed to accommodate his disability. The ADA compels an employer "to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on [its] operation of the business.'" *Ortiz-Martínez v. Fresenius Health Partners, PR, LLC*, 853 F.3d 599, 604 (1st Cir. 2017) (alterations in original) (quoting 42 U.S.C. § 12112(b)(5)(A)). To establish a claim for failure to accommodate, a plaintiff must demonstrate through reliable evidence that (1) he was disabled within the meaning of the ADA, (2) he was a qualified individual, and (3) the defendant, despite knowing of his disability, did not reasonably accommodate it. *Estades-Negroni v. Assocs. Corp. of N. Am.*, 377 F.3d 58, 63 (1st Cir. 2004).

Again, the disability must be known. It is not up to the employer to ferret out an employee's disability and decide what type of accommodation they need to do their job; an employee triggers this discussion with a disclosure of their disability and a request for accommodation. *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st

8

Cir. 2001) ("the ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request' from the employee."). Arguing that it did not know he was disabled and that he never requested a reasonable accommodation, Lifespan moves for summary judgment. Mr. Nozick does not dispute that he did not disclose his Tourette's Syndrome diagnosis to RIH but argues that because he did disclose a disability when he was employed at Miriam Hospital and, because Miriam Hospital is also a Lifespan partner, Lifespan and RIH should have known about it as well.

There is no evidence that Lifespan or RIH was in a position to know what Mr. Nozick told a former employer. He argues that his Miriam Hospital employment is listed on his resume so they should have checked his employee file at some point, but Ms. Nah, who was a part of the decision to fire him, was not involved in hiring him because she did not work for Lifespan at that time. ECF No. 20 ¶ 77 (Ms. Nah started as NCCU Nurse Manager two days before Mr. Nozick started at RIH). There is no dispute that Mr. Nozick did not disclose to Lifespan or RIH that he was disabled. The law is clear that, an employer "need not provide accommodations where it does not know an employee has a disability." *Estades-Negroni*, 377 F.3d at 64. Because Mr. Nozick did not report his disability to his current employer until after his termination, it had no obligation to provide an accommodation under the ADA.

## IV. CONCLUSION

At the summary judgment stage, the "question reduces to whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired" because of his disability. *Dávila v. Corp. De Puerto*

9

*Rico Para La Difusión Pública*, 498 F.3d 9, 16 (1st Cir. 2007). Because the Court finds that Mr. Nozick relies on conclusory statements and speculation to connect his termination for cause to his disability, Lifespan is entitled to judgment as a matter of law. The Court GRANTS its Motion for Summary Judgment. ECF No. 10.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

July 31, 2024